IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| ERIC LAVONNE DOUGLAS, | PLAINTIFF |
| V. | CIVIL ACTION NO. 3:19-CV-894-RPM |
| CHARLOTTE DIXON, ET AL., | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER**

### I.    Introduction

On December 6, 2019, plaintiff Eric Lavonne Douglas ("Douglas"), proceeding *pro se* and *in forma pauperis*, filed a 42 U.S.C. § 1983 ("Section 1983") civil rights complaint against defendants Mississippi Department of Corrections ("MDOC") Probations Officer Charlotte Dixon ("PO Dixon"), Beverly Green, Hinds County, Mississippi, Hinds County Detention Center ("HCDC") Warden Mary Rushing, HCDC "case manager" Belinda Jackson, Sergeant Chasyaw Tillman, Issaquena County Correctional Facility ("ICCF") case manager Julie Ann Britton ("Britton"), ICCF Warden Anderson Johnson ("Warden Johnson"), ICCF "officer in charge" Frankie Fuller ("CO Fuller"), MDOC Compliance Officer Aeria Gaddis ("CO Gaddis"), and administrative remedy program supervisor Karen Robinson ("Supervisor Robinson") alleging violations of his constitutional rights. Doc. [1].

On March 1, 2021, defendants Britton, CO Fuller, and Warden Johnson filed a motion for summary judgment. Doc. [72]. On March 25, 2021, defendants PO Dixon, CO Gaddis, and Supervisor Robinson filed a motion for summary judgment. Doc. [73–74]. Both motions are presently before this Court.

1

## II. Relevant Facts

On August 27, 2016, Douglas was arrested in Macon, MS, located in Noxubee County, on suspicion of aggravated assault. Doc. [69], Ex. 2, at 61. At the time of his arrest, Douglas was on probation in connection with a 2012 felony DUI conviction arising out of Hinds County. *Id.*, Ex. 2, at 56–58. Douglas' probation officer, defendant PO Dixon, detected that he had been arrested in Noxubee County and arrested him on March 13, 2017. *Id.*, Ex. 2, at 77–78. On March 17, 2017, Hinds County Circuit Court Judge William Gowan ("Judge Gowan") issued a warrant for Douglas' arrest on the grounds that he violated the terms of his probation by (i) failing to report to MDOC during a portion of his probation as well as (ii) his August 2016 arrest. *Id.*, Ex. 2, at 8, 15, 47–48. After an informal preliminary probation revocation hearing, PO Dixon determined that sufficient evidence of a violation existed to require Douglas' attendance at a full probation revocation hearing. Doc. [69], Ex. 2, at 50–53. A full hearing was scheduled for April 18, 2017 before Judge Gowan. Doc. [67], (T. 17); [69], Ex. 2, at 49, 53, 55, 69. On March 28, 2017, Douglas was released on his own recognizance pending the full revocation hearing. Doc. [69], Ex. 2, at 49, 64, 66. On that same date, Judge Gowan withdrew the Hinds County warrant via a separate court order. *Id.*, at 69. On the record before the Court, it appears that Judge Gowan found that Douglas' probation ended prior to his alleged violations and, therefore, concluded that no violation occurred. *See* Doc. [67], (T. 13–14, 17).

Around this time, on March 27, 2017, a Noxubee County Circuit Court grand jury indicted Douglas on felon-in-possession and aggravated assault charges arising from his August 2016 arrest. Doc. [69], Ex. 2, at 6. On that same date, the Noxubee County Circuit Court issued a warrant for Douglas' arrest ("Noxubee County warrant"), *id.*, Ex. 2, at 5; [70], at 2–3, which Douglas concedes was valid, Doc. [67], (T. 16). On November 7, 2017, Douglas was arrested by the U.S.

2

Marshal Service pursuant to the withdrawn Hinds County warrant. Doc. [69], Ex. 2, at 31, 66, 69. At the time that he was booked, the National Crime Information Center ("NCIC") database reflected that the Hinds County warrant was still active. Doc. [67], (T. 30–31, 35); [69], Ex. 2. After being booked, Douglas remained imprisoned at HCDC without an initial appearance pursuant to an invalid warrant for 53 consecutive days. Doc. [67], (T. 26); [69], Ex. 2, at 1, 31, 66, 69; Ex. 3, at 56. Finally, on December 29, 2017, Douglas was released into the custody of the Noxubee County Sheriff's Department in connection with the Noxubee County warrant. Doc. [69], Ex. 2, at 1. Upon being transported to Noxubee County, Douglas made bond and was released pending trial. Doc. [67], (T. 20–21). Following a guilty plea entered on September 19, 2018, Douglas was convicted on the felon-in-possession charge and sentenced to 10 years imprisonment with "25 percent" to serve. *Id.*, (T. 11–12). As part of Douglas' plea deal, the accompanying aggravated assault charge arising out of Noxubee County was dismissed. *Id.*, (T. 41).

Upon entering MDOC custody, Douglas was housed at ICCF. *Id.*, (T. 40). During ICCF intake, defendant Britton classified Douglas as a violent felon because the NCIC database erroneously reflected that the Hinds County warrant remained outstanding and that Douglas was wanted for aggravated assault. *See* Doc. [67], (T. 40–42); [76], at 3 n.2. However, Douglas notes, MDOC policy mandated that an individual convicted as a felon-in-possession is entitled to a "non-violent felon" prison classification. Doc. [67], (T. 40–42). Despite Douglas' informal requests for assistance, Britton did not resolve the NCIC issue because, she concluded, it was not an MDOC issue. *Id.*, (T. 44). Thereafter, Douglas sought relief by contacting several other prison officials, including Warden Johnson, CO Fuller, CO Gaddis, and Supervisor Robinson. Doc. [67], (T. 40–51); [73], Ex. 1.

Since Warden Johnson was Britton's superior, Douglas contacted him next—both directly and through "several grievances" addressed to him; Warden Johnson did not help him. Doc. [67], (T. 44–45). Likewise, he contacted CO Fuller, director of the ICCF administrative remedies program, for assistance in resolving the NCIC database issue. *Id.*, (T. 45–46). Like above, he sent grievances to her and spoke with her in person. *Ibid.* While CO Fuller promised to assist Douglas, she did not ultimately help him. *Id.*, (T. 46–47). Thereafter, Douglas contacted CO Gaddis, who is responsible for ensuring that MDOC facilities are running properly. *Id.*, (T. 47). CO Gaddis contacted both Hinds County and Noxubee County on Douglas' behalf; however, the counties were apparently still "confused" about the NCIC issue and did not resolve it. *Ibid.* CO Gaddis did not take any further steps to assist Douglas. *Id.*, (T. 47–48). Finally, Douglas spoke with Supervisor Robinson, who informed him that the NCIC issue was not an MDOC matter and he needed to contact Hinds County himself to resolve the issue. *Id.*, (T. 50–51); [73], Ex. 1, at 22, 24.

After being unable to resolve his issues through prison officials, Douglas filed for injunctive relief in Hinds County Circuit Court. Doc. [67], (T. 51). After waiting several months, Douglas petitioned the Mississippi Supreme Court for a writ of mandamus. *Id.*, (T. 51–52). On October 16, 2020, the Mississippi Supreme Court granted Douglas' petition and ordered the Hinds County Circuit Court to remove the withdrawn Hinds County warrant from the NCIC database. *Ibid.*

### III.   Standard of Review

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). "All facts and inferences must be viewed

in the light most favorable to the non-movant." *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 227 (5th Cir. 2018) (citing *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770 (5th Cir. 2000)). "'When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### IV.     Qualified Immunity Generally

In Section 1983 cases, a government official acting in his individual capacity can raise qualified immunity as an affirmative defense. *Saucier v. Katz*, 533 U.S. 194, 203, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The doctrine of qualified immunity attempts to balance two competing societal interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012) (quotation omitted).

At the first prong, the Court asks: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*,

533 U.S. at 201, 121 S.Ct. 2151. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Ibid.* At the second prong, the Court considers whether the government official's conduct violates "clearly established" law. *Hernandez v. Mesa*, ⎯⎯ U.S. ⎯⎯, 137 S.Ct. 2003, 2007, 198 L.Ed.2d 625 (2017) (per curiam). At this prong, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151). The rule relied on by the plaintiff must be "'settled law,' . . . which means it is dictated by 'controlling authority' or 'a robust 'consensus of cases of persuasive authority[.]'" *District of Columbia v. Wesby*, ⎯⎯ U.S. ⎯⎯, 138 S.Ct. 577, 589–90, 199 L.Ed.2d 453 (2018) (citations omitted). "The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Lincoln v. Scott*, 887 F.3d 190, 197 (5th Cir. 2018) (quoting *Wesby*, 138 S.Ct. at 590). In short, the legal principle at issue must be described with a "high 'degree of specificity,'" *Wesby*, 138 S.Ct. at 590 (quotation omitted), and be "beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 743, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011).

## V. <u>Analysis</u>

Individuals do not have a constitutional right to live a life free from clerical errors. *See, e.g.*, *Johnson v. Scotts Bluff Cty. Sheriff's Dep't*, 245 F. Supp. 2d 1056, 1059–60 (D. Neb. 2003) (finding that plaintiff was merely inconvenienced by arrest arising from NCIC-related misidentification on a single occasion). Instead, an individual must demonstrate that the government official's clerical error resulted in an infringement on his constitutional rights. *Rogan v. City of Los Angeles*, 668 F. Supp. 1384, 1390–95 (C.D. Cal. 1987) (finding constitutional violation where man was arrested

four times, three at gunpoint, over two-year period because of NCIC database error showing arrest warrant).

The Court begins by addressing Douglas' clerical error claims against Britton, Warden Johnson, CO Fuller, CO Gaddis, and Supervisor Robinson (collectively, "postconviction defendants"). First, it is undisputed that PO Dixon was directly responsible for the NCIC error insofar as she failed to file the correct paperwork. Doc. [67], (T. 22–23). Furthermore, these defendants only became involved in the present case *after* Douglas was convicted. *Id.*, (T. 40–51). As such, even liberally construed, Douglas' only allegations against the postconviction defendants arose from their failure to (i) provide him with the administrative relief that he sought or (ii) informally help him. *See generally* Doc. [67]. It is well-established that Douglas does not have a generalized constitutional right to receive his desired administrative remedy. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) ("[The prisoner] does not have a federally protected liberty interest in having . . . [a] grievance[] resolved to his satisfaction."). *See also Dehghani v. Vogelgesang*, 226 F. App'x 404, 406 (5th Cir. 2007). Since Douglas does not have a right to a formal administrative remedy, he does not have such a right to an informal remedy either. *Geiger*, 404 F.3d at 374. Therefore, he cannot sue the postconviction defendants for simply failing to the remove the Hinds County warrant from the NCIC database. *Ibid.* Insofar as he argues that the postconviction defendants' inaction impacted his MDOC prison classification, Douglas does not have a constitutional right to a particular prison classification, prison unit, or prison cell in the first instance. *Wolters v. Fed. Bureau of Prisons*, 352 F. App'x 926, 928 (5th Cir. 2009). *See also Paz v. Weir*, 137 F. Supp. 2d 782, 810 (S.D. Tex. 2001). Since a clerical error is not, without more, a basis for a constitutional claim and Douglas has failed to identify a constitutional violation flowing from the postconviction defendants' failure to remove the Hinds County warrant from the NCIC

database, Douglas' claim against them must be dismissed. *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151.

The Court views Douglas' claim against PO Dixon in a somewhat different light. On March 28, 2017, Judge Gowan issued an order withdrawing the Hinds County warrant. Doc. [69], Ex. 2, at 69. Based on the record before the Court, it was PO Dixon's responsibility to ensure that the Hinds County warrant withdrawal order removed the Hinds County warrant from the NCIC database. Doc. [67], (T. 22–23). However, she neglected to remove the warrant from the database and the U.S. Marshals arrested Douglas, pursuant to this invalid warrant, on November 7, 2017. Doc. [69], Ex. 2, at 31, 66, 69. Drawing all reasonable inferences in Douglas' favor, PO Dixon's clerical error was directly responsible for Douglas' arrest.

In light of the above, the question becomes whether PO Dixon's clerical error rose to the level of a constitutional violation. As noted above, Douglas does not have a constitutional right to live free of clerical errors. *Johnson*, 245 F. Supp. 2d at 1059–60. Instead, he needed to demonstrate that the clerical error caused a constitutional violation. *Ibid.* In cases arising from NCIC and similar warrant-related clerical errors, the federal courts have recognized that the erring government official may run afoul of an individual's Fourteenth Amendment substantive due process rights in the event that (i) the individual is repeatedly arrested pursuant to that invalid warrant *and* (ii) the erring official became aware of the error but failed to take action. *Rogan*, 668 F. Supp. at 1390–91. *See also Baker v. McCollan*, 443 U.S. 137, 144–45, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Finch v. Chapman*, 785 F. Supp. 1277, 1282 (N.D. Ill. 1992). Of course, negligent conduct is insufficient to establish a substantive due process violation. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

Here, Douglas was arrested on one occasion after PO Dixon's error. Doc. [69], Ex. 2, at 31, 66, 69. There is no dispute that the error was unintentional. Doc. [67], (T. 22–23). Likewise, there is no indication that PO Dixon was aware of her error at any time before or after Douglas' November 7, 2017 arrest. *Id.*, (T. 22). While the Court may agree that PO Dixon acted negligently, she did not violate Douglas' substantive due process rights because he was not repeatedly arrested and she was not aware of the error. Cf. *Rogan*, 668 F. Supp. at 1390–91. As a result, PO Dixon is entitled to qualified immunity as well as summary judgment. *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151.

Additionally, and in the alternative, PO Dixon is entitled to qualified immunity because her conduct did not violate "clearly established" law. *Hernandez*, 137 S.Ct. at 2007. At the "clearly established" prong of the qualified immunity analysis, the Court considers whether PO Dixon's conduct violated "'settled law,' . . . which means it is dictated by 'controlling authority' or 'a robust 'consensus of cases of persuasive authority[,]'" *District of Columbia v. Wesby*, ––– U.S. –––, 138 S.Ct. 577, 589–90, 199 L.Ed.2d 453 (2018) (citations omitted). Here, there is no "clearly established" law indicating that a government official's clerical error leading to a single arrest violates "clearly established" law. *Compare Rogan*, 668 F. Supp. at 1390 (four arrests, three at gunpoint, rises to level of Fourteenth Amendment violation), *with Finch*, 785 F. Supp. at 1282 (two arrests insufficient to rise to level of Fourteenth Amendment violation); *Johnson*, 245 F. Supp. 2d at 1059–60 (one arrest does not rise to level of Fourteenth Amendment violation). For these reasons, PO Dixon is also entitled to qualified immunity.

## VI. Conclusion

**IT IS THEREFORE ORDERED AND ADJUDGED** that Britton, CO Fuller, and Warden Johnson's [72] motion for summary judgment is **GRANTED**. PO Dixon, CO Gaddis, and Supervisor Robinson's [73, 74] motion for summary judgment is **GRANTED**.

**SO ORDERED**, this the 6th day of October 2021.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE